# Poor District of McKean County, Appellant, *v.* Commissioners of the Rouse Estate.

*Poor law—Settlement of foreigner—Act of* 1836.

The third paragraph of the 9th section of the Act of June 13, 1836, P. L. 539, relates to a foreigner as well as a naturalized or native citizen. "Any person who shall bona fide take a lease, etc., of the yearly value of ten dollars, and shall dwell upon the same for one whole year and pay the said rent" thereby gains a settlement in the district.

*Poor law—Order of removal by justices of the district.*

Under the 16th section of the Act of June 13, 1836, P. L. 539, an order of removal issued by two justices of the removing district is binding as legally issued, when the district is coextensive with the county.

Argued May 16, 1898.   Appeal, No. 177, April T., 1898, by plaintiff, from decree of Q. S. Warren Co., June Sess., 1896, No. 21, affirming order of removal.   Before Rice, P. J., Wickham, Beaver, Reeder, Orlady and Porter, JJ.   Affirmed.

Appeal from order of removal by two justices of the peace of Warren county.   Before Noyes, P. J.

The court below, Noyes, P. J., issued an order of removal from which the poor district of McKean county appealed. The appeal was dismissed and the order of removal affirmed in an opinion by Noyes, P. J., from which the facts of the case sufficiently appear.   The opinion is as follows:

This is an appeal by the poor district of McKean county from an order of removal granted by two justices of Warren county.   The following are the facts:

Emil Bergstrum, the poor person named in the order of removal, was born in Sweden and came to this country upwards of eleven years before his removal.   He was upwards of forty years of age and married.   In the spring of 1893 he was employed in Smethport, McKean county, and resided within the poor district of McKean county with his wife in a house which he rented for about eight months, paying the stipulated rent amounting to $24.00; he then immediately removed to another house in the same district which he had rented for one year at

$5.00 per month, and lived therein for nine months, paying the rent amounting to $45.00.   He then left with his wife, informing his friends that they were going back to Sweden to live, but left his goods .in the house in the care of a friend as his agent, by whom the balance of the year's rent was paid for him and out of his funds.

He was subsequently found insane and chargeable in Warren county, and removed as above stated.

[There is no evidence showing in what place in Sweden he was born, or originally settled, nor to what particular place he intended to return, nor that he did in fact return, thither.] [11]

We think it due to the diligence and zeal of the counsel for the appellants, to state our opinion upon the several points raised in his brief.

1. The case of Allegheny City v. Allegheny Twp., 14 Pa. 138, is decisive to the point that the residence of the pauper for the one whole year within the district and the payment of more than $10.00 rent constitutes a settlement, although the residence may be in two or more tenements.

[A healthy foreigner coming direct from a foreign country may acquire a settlement by mere residence for a year without paying rent.   But it does not follow that if he removes to another district he may not gain a settlement there in one of the other modes specified in the law.   In our opinion citizenship has nothing to do with a question of settlement by other acts than mere residence.   If the sixth clause of the act is to be regarded as providing the only mode by which a foreigner may acquire a settlement in Pennsylvania, then a citizen of another country, no matter how healthy, cannot acquire a settlement here if he be not "healthy;" and one who has acquired a settlement by residence cannot lose it by removal elsewhere under any circumstances whatever, unless he returns to his own countr̄ and comes again directly from thence.   These results are ιot such as the law contemplates, nor are there any terms used which make it necessary to bring them about.] [12]

2. [Bergstrum did not lose his settlement in McKean by returning to Sweden.

We have no evidence what the laws of Sweden are, and hence must presume them to be the same as our own.   He would not lose his settlement in McKean until he regained one elsewhere.

630    POOR DISTRICT v. COMMISSIONERS.

Opinion of Court below—Assignment of Errors.    [7 Pa. Superior Ct.

Returning to the place in Sweden where he was born and where his settlement originally was, might be enough to regain that settlement, but this does not appear, indeed the evidence does not show that he actually went to Sweden at all.] [13]

3. [McKean county, under the evidence, must be taken to be the place of the pauper's last legal settlement. It is true that the burden of showing this is upon the appellees. But they are not required to prove negatives. Having shown the legal settlement of Bergstrum in McKean, the presumption is that it continues there until the contrary appears.] [14]

4. Notwithstanding the decision in Washington v. Beaver, 3 W. & S. 548 and other cases [we think the order of removal was legally issued by the two justices of the removing district]. [15] In that case the overseers were at liberty to apply to justices residing in the county, but outside the district affected, and having chosen to apply to two justices of the very township affected the Supreme Court quashed the order on the ground that it was against natural justice that an interested person should act as judge, adding that "nothing but express words can induce us to give an act of the legislature such a construction."

In this case there is no room for construction. Warren county is a single poor district, and the jurisdiction is given only to justices "of the same county."

Perhaps the legislature ought to amend the law to meet the changed conditions, but we cannot. The interest, however, is much less than the interest of a taxpayer in the expenditures of his township or borough. It is no greater than that of the judges of this court which has never been regarded as disqualifying.

[The appeal is dismissed, and the order of removal affirmed at the costs of the appellant.] [16]

*Errors assigned* were (1) in not finding "that the evidence does not show conclusively that Emil Bergstrum ever gained a legal settlement in the McKean county poor district." (2–10) In not finding that the alleged pauper left McKean county in the fall of 1894 and returned to Sweden, his native country, with the avowed intention of making that his future home, and that he took his family with him and left them

there and thereby lost his settlement in McKean county, if ever gained there. (11–16) To the findings of the learned court below, reciting same.

*T. F. Richmond*, with him *Hinckley & Rice*, for appellant.— It is not only necessary that appellees should prove conclusively that Bergstrum had at one time a legal settlement in the McKean county poor district, but they must also prove that it was the district in which he was last legally settled. This they have totally failed to do. They have not even attempted to do anything of the kind.

The place of the birth of the pauper is prima facie the place where he was legally settled: Wayne Twp. v. Jersey Shore, 81 Pa. 264; Limestone v. Chillisquaque, 87 Pa. 294; Toby v. Madison, 44 Pa. 60.

But proving that a pauper had acquired a settlement other than that of his birth, is not prima facie evidence that such acquired settlement is the place where he was last legally settled.

Under our statutes, the removal is to be to the place where the pauper was last legally settled, whether in or out of Pennsylvania, a provision which may open in some cases a very wide field of inquiry: Toby v. Madison, 44 Pa. 60.

We claim that the moment he set foot on Swedish soil his settlement, residence and domicile was in Sweden; his last legal settlement was not in McKean county.

One who abandons his settlement in Pennsylvania and gains a settlement in another state cannot claim his old settlement on his return to this state: Lower Augusta v. Howard, 9 Atl. Rep. 446; Juniata County v. Delaware Twp., 107 Pa. 68.

And the poor district where he first becomes chargeable is liable for his support: Plum Creek Twp. v. Elderton Boro., 129 Pa. 626; Taylor Twp. v. Shenango Twp., 114 Pa. 394.

It has been decided many times that on the ground of personal interest justices of the peace were not competent to grant an order of removal from their own district: Washington v. Beaver, 3 W. & S. 548; McVeytown v. Union Twp., 5 W. & S. 434; Upper Dublin v. Germantown, 2 Dallas, 213, s. c. 1 Yeates, 250; Susquehanna Twp. v. Monroe Twp., 4 Pa. Superior Ct. 589.

*W. W. Wilbur*, of *Wilbur & Schnur*, for appellees.—Where the evidence offered was competent and sufficient, if believed, to sustain the findings of fact made by the court below, the appellate court will not review such findings: Overseers v. Overseers, 1 Pa. Superior Ct. 383; In re Lunacy of Margaret Christy, 2 Pa. Superior Ct. 259; Overseers v. Overseers, 4 Pa. Superior Ct. 570.

If the alleged pauper did gain a settlement in McKean county, he did not, by going back to Sweden, lose his settlement there: Com. v. Poor Dist., 169 Pa. 116.

One having a legal settlement in a poor district in this state, and who removes therefrom, but before obtaining a legal settlement elsewhere, returns to another district in this state, and becomes chargeable therein, the district where he gained a settlement remains liable for his support as a pauper: Poor District v. Poor District, 1 Lanc. 347; Brightly's Digest, 4570, sec. 2, not reported; Juniata County v. Overseers, 107 Pa. 68; Plumb Creek Twp. v. Borough, 129 Pa. 626; Braintrim v. Windham, 10 C. C. R. 250.

OPINION BY BEAVER, J., July 29, 1898:

The order of removal in this case was legally issued upon express statutory authority. The 16th section of the act of June 13, 1836, provides: " On complaint made by the overseers of any district to one of the magistrates of the same county, it shall be lawful for the said magistrate, with any other magistrate of the county where any person is or is likely to become chargeable to such district into which he shall come, by their warrant or order directed to such overseers. to remove such person at the expense of the district to the city, district or place where he was last legally settled, whether in or out of Pennsylvania," etc.

It is true that in Washington v. Beaver, 3 W. & S. 548, it was held that justices of the peace are incompetent on the ground of interest to grant an order of removal of a pauper from their own township to another, Mr. Justice ROGERS, who delivered the opinion of the court, saying: "As it is against natural justice to make a man a judge in his own case, nothing but express words can induce us to give an act of the legislature such a construction," but in the present case we have ex-

press words of the act of the legislature; and, in order to give effect to that act, we must necessarily hold that this order of removal was properly issued for the reason that the complaint of the overseers can be made only to magistrates of the same county; and to hold that an order of this kind was illegally issued would simply result in a denial of the right of removal in such cases, for there is no authority on the part of the overseers or directors to make complaint to the magistrates of any other county.

The third paragraph of the 9th section of the act of June 13, 1836, relates to a foreigner as well as to a naturalized or native citizen. The language is very broad, providing that "any person who shall bona fide take a lease of any real estate of the yearly value of ten dollars and shall dwell upon the same for one whole year and pay the said rent," thereby gains a settlement in the district.

The testimony taken in the case clearly shows that the pauper gained a settlement in the McKean county poor district. This having been shown, the settlement so gained is presumed to be his last legal settlement, until the contrary is shown. The court was clearly justified in holding as a fact that there was no actual proof that the pauper had returned to his native country Sweden. His expressions as to his intentions and the receipt of his wife for money sent to Sweden were not sufficient to justify the finding as a fact that the pauper himself had actually returned to his native country.

It is unnecessary to add more. The opinion of the court below fully covers all the points involved and, the conclusions reached being justified by the law and the facts, the decree is affirmed.